of this morning. Numbers 15-2585 and 2712, National Labor Relations Board v. FedEx Freight, Inc. And Mr. Rajapaksi, is that correct? Ms. Rajapaksi, I apologize. And Mr. Rich. Ms. Rajapaksi, are you representing the petitioner, right? I am, but I discussed this with the clerks up under Rule 15.1. That's fine. That's fine. We'll do that. No problem. You're right. You did discuss it. I forgot. Come on up, Mr. Rich. May it please the court, my name is I'd like to request three minutes for rebuttal. That's fine, sir. And I believe we've got the order straightened out. We are the petitioner in one respondent in the other, but we are the employer challenging specialty health care. In specialty health care, the Labor Board fundamentally changed the way it decided which employees could vote on whether to have a union. Before we get to that, let's talk about the pretty significant point in this appeal. Section 160 of Title 29 is a jurisdictional limitation on this court. The board has argued vociferously that you didn't raise this thing, this argument before them, except the passing reference in a footnote, and therefore you haven't preserved your argument. Please speak to that. Yes, that was sufficient, Your Honor. In the first place, everybody knew what was going on. They weren't about to reverse this. This was a major change. Does that really matter whether everybody knew what was going on and they weren't about to do it? Does that free you from the obligation under 10E of the NLRA to raise an argument and articulate it before the board? It allows us to put our guns where they need to go, which is what we did. We raised the matter in a footnote. We specifically identified the reasons for our disagreement, which were those raised in Member Hayes' dissent, and under the Cats Realty cases and Best Products cases, the courts of appeals say that's sufficient. The courts of appeals say it's enough for you to make a passing reference in a footnote and that preserves it, or do the courts of appeals say it's appropriate for you in a later board proceeding to incorporate by reference an argument fully articulated in a previous filing? The previous filing was the one that made the reference to the Member Hayes' dissent, and we specifically identified it. Right. That's the very question I'm asking you. If all you say is in a footnote, in a filing that's two, three dozen pages long, in which you articulate a variety of reasons applying the specialty health care standard, why the board got it wrong, if the only thing you say is in a footnote, by the way, we like Member Hayes' dissent and think the specialty health care was wrongly cited, that's the totality of your argument. How is that specific enough to put the board on notice of what you're arguing and to meet the argument head-on? Well, we specifically said that I believe that we relied on Mr. Hayes' dissent and disagreed with it for the reasons set forth therein. Furthermore, the answers that we advanced in the underlying proceeding were essentially equally applicable to the other proceeding, the regular community of interest test. What we intended to preserve was what we're arguing here now, and that is the wrongly cited. Would it have worked here? We've got lots of cases that say, quote, arguments raised in passing such as in a footnote, but not squarely argued, are considered waived. That's how we treat the kind of footnote that you dropped in NLRB, on the filing before the NLRB. If it's, for our purposes, if we treat passing references in a footnote as leaving an argument waived, why would it be different before the NLRB when there's actually a statute that says arguments not raised after exceptional circumstances will not be considered? The law does not require doing things that are unnecessary and really just aimless. It would have been fruitless for us to argue this below the board was going to do what it was going to do. We had case authority indicate that it was sufficient. It would have been fruitful because it would have complied with 160E, right? I mean, it would have allowed you to come up here and not face a question about waiver, so that would have been some pretty good fruit to have, wouldn't it? If you're suggesting that we could have done better, I don't think I've argued a case where I couldn't have done better. To what extent are you relying on the relitigation rule from prior part, that is? I'm not sure I understand your question, Judge Stryka. The relitigation rule? No need to relitigate. Well, maybe I was mistaken. In other words, your second submission incorporated by reference to your first, I think, is the question. Yes. That's what you're relying on. Yes, I'm sorry. That's precisely it. And that is what we are saying. There's no reason to relitigate what we did. In fact, we really couldn't have relitigated it because in the case it was an unfair labor practice case. And those are resolved on motions for summary judgment. Of course, that depends on whether you actually did litigate it in the first instance, right? That's the question. Yes. And the question is, was that sufficient? Was the reference in the footnotes? I think it was more than passing around. Now I wish that we had argued it more. But I think that the issue, the request for review raised it. It was reaffirmed in the notice to show cause. If you get over that hurdle, it's like specialty health care in 2011 was trying to make sense of a number of prior inconsistent, sometimes inconsistent opinions or at least opinions that were in tension with each other. And the board adopted what the D.C. Circuit three years before in Blue Man Vegas had said, when you are dealing with what is the smallest unit that you can have and you're trying to add people, then you need to show an overwhelming community of interest. And that was what the NLRB had said in Blue Man Vegas, and that's what the D.C. Circuit specifically affirmed. And in 2011, the board is taking all of these various disparate opinions and trying to say, okay, going forward, here's how we are to understand what clearly before was somewhat confusing on our part. And also making sure that the burden is placed on the employer on the second step of specialty health care. What's wrong with that? They were making a fundamental change, Your Honor. They were doing more than clarifying. Blue Man Vegas, three years before, did that make a fundamental, did the board make a fundamental change there? No, it did not. Blue Man Vegas, for some reason, the D.C. Circuit decided to resurrect this overwhelming community of interest standard, and they did so by relying on accretion cases. They didn't rely on regular board cases. They relied on accretion cases where the question is, are you going to disenfranchise people and not allow them to vote in order to put them into a unit? The Blue Man Vegas case was made out of whole cloth, Your Honor. Well, they say, your opponent's NLRB points out that they've used language like substantial community of interest or strong community of interest or significant community of interest or highly integrated community of interest, and these are all statements that are akin to, I take it their argument is, these are akin to overwhelming community of interest, so they're not making a change. They've used different language, but they've consistently, over the years, required some It's not what you purport it to be that both sides came in, proposed a unit, and then they picked the best one. It's always been when you're pushing back, you've got this heightened standard. How are they in error in their assessment of their own previous approach? The standard may be heightened under the normal community of interest, but it is not overwhelming. The change that they made, and it is a fundamental change, Your Honor, make no mistake, as Member Hayes pointed out, it's a fundamental change because they lowered the initial showing the union must make to where all it has to do is identify a group, and then once they identify a group, the employer must present overwhelming evidence to change the union's selection. Okay, so back to Blue Man Vegas, it looks like, when I'm looking at page 426, it looks like they've applied the overwhelming community of interest test with regard to adding additional people to the voting group that could vote on a union. The sum of these differences was sufficient to justify the board's decision that the MITs, the musical instrument technicians, do not share an overwhelming community of interest with the other stage crew employees. And then the conclusion is, in sum, we hold the board applied the correct legal standard to determine whether the proposed bargaining unit was appropriate. The board's determination that the MITs may be excluded from the bargaining unit because they do not share an overwhelming community of interest is supported by substantial evidence. If you read the board's decision, the board never adopted the overwhelming community of interest. So you're saying Judge Ginsburg was just totally wrong, made it up out of whole cloth, is what you're saying. He made it up out of whole cloth. May I reserve, Your Honor, I would like to close with this. What we have here is a fundamental change that was not acknowledged by the administrative agency. A fundamental change without acknowledgement and without explanation is per se abuse of discretion, and a court cannot supply that reasoned explanation that's required. Can the board obviously can do things by rulemaking, as we put out for notice and comment, but can also do things through an adjudicator or decide matters and set down principles through an adjudicator function, can it not? Adjudication and rulemaking are treated the same. The standard review is arbitrary and capricious abuse of discretion under 706A of the APA. Why is the Sixth Circuit, a pretty comprehensive opinion of the Sixth Circuit in Kindred Nursing, why is that incorrect in saying that, hey, specialty health care clarified the law, we're glad, we support it, and we're going forward with it? I was hoping to get that. Actually, in Kindred, and I realize I'm going to have to get this back on. Thank you, Your Honor. In Kindred, the Sixth Circuit supplied what was missing in the board's specialty health care decision, and that is giving a reasoned explanation for its change. There were three parts to the Kindred decision. First, it said unnecessary litigation. That was a reason. That was never mentioned in the specialty health care decision. The second reason was that the right to unionize is a central right of employees under the NLRA. Now, that may be true, but that can be the only reason that they adopt a rule, because that violates Section 9C5 of the Act. And that's a very important aspect here, because the only thing that the board has to support what they're doing is to make it easier for people to unionize, and that violates Section 9C5. The third is that it's supported by precedent. Our briefs are quite extensive on the point there is not a single case, with the exception of the Lundy case in the Fourth Circuit, that was denied enforcement, where the board adopted... I think Lundy was a reaction to the perception that there were boards rubber-stamping what unions said was the correct unit for voting purposes. But is that the case any longer? It's the case that specialty health care creates, and I would ask the court to take a look at a case called DPI SecuPrint, issued last summer. What's it called? DPI SecuPrint. It's in our reply brief, particularly Member Johnson's dissent, where he points out that this has essentially allowed the unions to have any bargaining unit they want. Thank you. I appreciate your time. We'll get you back on rebuttal time. Thank you. May it please the court, my name is Milakshmi Rajapaksa. I'm counsel for the National Labor Relations Board. There's very little question in this case in terms of the facts, that the unit that the board approved is an appropriate unit, which complies with sections 9A and 9B of the National Labor Relations Act. So let's start with the waiver question, though. Is this an argument that it's proper for us to be taking up? You're going right to the merits. Is the board fine with us going right to the merits, too? Well, the board wants the court to go to the merits of its finding that this unit is an appropriate unit under specialty health care. The board does not believe that the court can properly reach the challenge to the specialty health care standard. Did the board address the propriety of the specialty health care standard during the course of the proceedings with FedEx? It did, didn't it? It did not in this proceeding. Member Johnson referred to it. Member Johnson referred to it because of his reservations about that standard, which he pretty much articulates his reservations in every case. So it was in front of the board and they considered it, right? They did not consider it. There were no specific challenges to specialty health care before the board. I mean, as your Honor pointed out in the discussion. I'm not pointing out anything. I'm just trying to ask questions. So now I'm asking you to try to take the other side, right? They say, we did raise it. We put it in a footnote and we expressly adopted the arguments that were articulated by Member Hayes and forcefully articulated by Member Hayes about why this is a fundamental change and wrong. It was in front of the board. Member Johnson addressed it. It was preserved and addressed and it should be open game for the Third Circuit. Why are they wrong about that? They're wrong because it was a one-sentence reference to their position in a footnote. And just so that everyone is clear as to what the footnote said, it said the employer posits that specialty health care was erroneously decided largely for the reasons stated by the dissent of specialty health care. And then it goes on and says, as a fact, we understand that you've already made your decision. In essence, this is a placeholder. It's usually the way it would be done back when I was in private practice. You would say, just want to note for the record that there is an objection raised. I realize that you've made your decision and will go on. But I'm preserving it for the record. That's it. Isn't that what this, in effect, has done? I disagree, Your Honor. I think what the footnote does is essentially expresses agreement with some parts of the dissent. And it's not clear which parts the company intended to adopt at that point. Which parts of the dissent that deal with specialty health care for the reasons given by the vigorous dissent of the member that dissented in specialty health care? Right. But the word largely left it open for the Board to guess, essentially, as to which specific arguments were in play. Is it the addition of the adverb that makes the difference for whether this is a preserved argument or not? I think it's relevant, Your Honor. It's not the totality of the Board's argument. I mean, the essence of the argument that the Board is making in terms of Section 10e is that one of the major policies behind Section 10e is notice. You have to give the Board adequate notice. Clearly, Johnson had notice, and the other members would have seen his comments. And therefore, even if they had ignored the footnote at the beginning, they had noticed that Johnson didn't miss it, and he dealt with it. Right, but Section 10e essentially places an obligation on the party, regardless of what the Board members have discussed amongst themselves. The obligation under Section 10e is that a party, no objection that has not been raised by a party before the Board may be pressed in court. And the essence of the 10e argument in this case is essentially that the party here, FedEx, did not raise any specific objection. It didn't make the basis for its challenge clear to the Board. And so, of course, the Board didn't engage in any discussion of those challenges. Let me see what you said in the beginning. You said that you want us to address specialty health care on the merits, but we also want you to say that the challenge by FedEx to specialty health care was not made in this case. Which way do you want? Which one do you want? One or the other? You can't do both. We want the Court to uphold the Board's unit determination, which is based on application of specialty health care. But if there was a waiver of that argument, how do we get to? There's a waiver of any challenge. So there's the application of specialty health care, which the Board thinks is appropriate in this case. But not to the adoption of it. Excuse me? But not to the adoption. Right, not to the propriety of that standard. That is not before the Court. But the application of that standard in this case, if there was any, of course the company is not really engaging in any challenge to how specialty health care was applied in this case. Its challenges are very much based on the propriety of the standard itself, which is a separate question. Let me see if I've got this, because I am now even more confused. Do you want us to visit, like the Sixth Circuit did, whether specialty health care is a correct standard, or do you want us to say that they have waived the challenge to whether specialty health care is the correct standard and only address whether specialty health care was applied correctly in this case? It's the latter, Your Honor. So we would ask the Court to apply specialty health care and uphold the Board's unit determination in this case and not address any challenge to the specialty health care standard.  I got it. Turning, however, to just the facts of this case, which I don't think anyone has discussed as yet, there really is no question that the city and road drivers in the proposed bargaining unit, the bargaining unit that was proposed by the union, constitute an appropriate unit. They perform the same function of driving outside the facility, delivering freight outside the facility, and they share the same terms and conditions of employment. They have uniformly higher wages than the dock workers that the company would include in the unit. And in making this determination, contrary to what the company has suggested, the Board did undertake its traditional community of interest analysis. So the Board considered what these, not just what the drivers have in common amongst themselves, but also looked somewhat outward to what distinguishes them from other employees like the dock workers. And the Board took all of the facts into account about the differences and similarities between these various types of workers in making its unit determination. The company does not really challenge the idea that the drivers have a substantial amount in common. Let's take a step back and ask the question and have you address on the specialty health care standard whether it squares up with Section 159C of Title 29. I understand your colleague on the other side could be saying that that statute that requires, says the extent to which employees of an organization shall not be controlling and determining what unit is appropriate is actually overridden by the way the Board has adopted specialty health care and treats the employer's position as having to have some super reason or forget it. And that the Board is in effect deep sixing a statutory provision. What's your, you know, what's wrong with that position from the other side? Why is that not a credible and a serious argument for us to be concerned about? Okay, right. At the outset I'll say that this is one of the arguments that we would say is tenied. But assuming that the argument is properly before the Court, what we would say is the Supreme Court has interpreted Section 9C-5 to mean simply that the Board cannot stop at the observation that the union wants a specific unit or that employees are organizing in a specific grouping. The Board has to go on under Section 9C-5 and state substantial reasons other than extent of organization. If the standard you set up though is you have to have an overwhelmingly better reason, doesn't that effectively read the section out of the statute? And indeed in practice make the union's decision the de facto determination, the de facto dispositive factor contrary to statute. Right. Under, I would begin, Your Honor, if we could back up just a little. Under the American Hospital Association Supreme Court case, it is perfectly permissible for the initiative in terms of organizing a unit to rest with the employees. So the Board, what the Board does. Nobody suggests otherwise. Right. So what the Board does under Section 9 of the Act is it starts with the petition for a unit. And it considers whether the employees in that unit share a community of interest. And what happened in Lundy Packing, I'd like to just mention that case because I think the 9C-5 challenge that the company is raising is very much based on the Fourth Circuit decision in Lundy Packing. The Lundy Packing problem was essentially what Judge Ambrose, I believe, suggested earlier in this argument, which is the Board did something uncharacteristic in that case. The Board did not conduct a community of interest analysis at the outset. So the critical time for Section 9C-5 purposes is the initial stage. Okay. Even if we accepted your assertion that Lundy Packing was sort of a unique set of facts and a misstep by the Board, answer, if you would, the argument that the other side is making, that it is that traditionally the Board had let the union come forward and then let the employer come forward and did an assessment of which bargaining unit was the better and fair way to go. And that after special health care, you've got to come in with quote overwhelming evidence that that's the standard you set up. It changes the field. It changes it not just a little bit, but fundamentally changes the field. And it, in effect, ignores 9C-5, rids it out of the statute. So even if Lundy Packing was its own unique set of facts, speak to the legal assertion they're making that overwhelming is in the face, in the teeth of the statute. The statute was already satisfied at an earlier stage when the Board conducted its traditional community of interest analysis. Has the union ever failed to meet the first step of the specialty health care test, according to the Board? Yes. Yes, it has. And, for example, in Neiman Marcus, which is a Board case, the union essentially can put forward a unit, but the Board independently considers is this a readily identifiable grouping of employees? Do these employees share a community of interest? And sometimes the finding is that they don't. So the argument in position is that 9C-5 doesn't, that's an assessment that's made just on what the union says before anybody else, including the employer, comes in with any information. And that once you've done what you're going to do as the Board, just looking at what the union says, you've satisfied the statute, and that's why overwhelming evidence can be demanded of the employer. Have I articulated it correctly? I mean, if I haven't, that's fine. But can you yes or no me on that? Your position is 9C-5, that only applies when we're looking at what the union said. We do an independent assessment. It doesn't matter what anybody else says. And once we've done that, we've satisfied it. Is that it? Yes. If the Board has articulated substantial reasons why a unit is an appropriate unit. Based on just what one side comes in and says to you. Well, but it's not what one side comes in and says. The one side comes in and proposes a unit. The Board then independently considers, is this an appropriate unit, which is all the statute requires. Independent of what anybody else, including the obvious other party of interest here, the employer, says. Well, the Board actually does, in the community of interest analysis, the Board considers distinctness. Does this unit share a distinct community of interest? So without input from the employer, you guess what the employer might say. That's the basis on which you decide it. And then you listen to the other side. Well, the Board is aware at the outset of the employer's position. Right? So in this case, for example, it was known from the very outset that the employer was seeking. So you are weighing the employer's position? Well, no. The Board is taking into account that there's a challenge to this grouping of employees  from other employees. But you're not taking it seriously enough to take into account the employer's articulated evidence and views at that point, because you haven't heard them yet, right? Right. And, again, I think this goes back very much to the idea that the initiative rests with the employees. So the Board is not entertaining multiple possible appropriate units at the same time. Of course, it's beginning. It's not weighing one side against another. Right. The Board is considering at the outset the unit that has been proposed by the employee's representative. Thank you very much, Your Honor. Thank you very much. Mr. Rich. May it please the Court, I realize that I have taken my time, and I thank the Court for its indulgence. No problem. I would like, first of all, to say if the Court has jurisdiction to consider the merits of the unit determination under specialty health care, I would suggest that we ought to take a look at whether specialty health care violated basic fundamental principles of administrative law. It was a fundamental change made by the Labor Board. There were no reasons given for it. Can I ask you this? In reading and taking a look at what you said to the Board, you've argued before us that there was a traditional, as you put it, a traditional approach to doing this. And it's an approach along the lines of what Member Hayes said in the specialty health care dissent. But it didn't appear to me that you articulated how that traditional approach would have applied in this instance and how applying that traditional set of standards and approach would have prompted a different result. Your argument throughout in the first and second submissions was addressed to the specialty health care standard and didn't articulate the alternative. Am I correct about that? You are correct in that our arguments were directed towards specialty health care. Many of the same arguments could be made toward the traditional standard. The traditional standard is what? Did you just compare what they suggest as the unit versus what you suggest as the unit? Is that correct? What is the traditional way of looking at it? The traditional way is to take the entirety of the employees that might be included and apply all the factors equally to the entire grouping. Under the specialty health care, they isolate the community of interest test to just that small group that the union petitions for. And then if the employer wants to change that, they have to come up with an overwhelming evidential issue. Now I'm lost because let's go back to 1970. I thought that there was a concern that people had, at least you saw it expressed in Lundy, that whatever the union said as a unit was correct. So let's say the union says X number or whatever it might be. It might be, in this case, FedEx drivers. And you say, wait a minute, you've got to include the dock workers. Under the traditional test, what would you do to go about showing that the dock workers should have been included within that unit? Under the traditional test, we would emphasize more the functional integration of the unit, the fact that there's a substantial commonality of supervision and common policies applied to all. So that sounds like, to some extent, what the second prong is of specialty health care. The second prong of specialty health care, other than making it overwhelming. Well, overwhelming is a big difference. And that is our fundamental disagreement. I understand that there is a heightened standard that an employer must meet once a union files a petition. But it ain't overwhelming. And the concern that you indicated that motivated Lundy, there's always been a concern among certain groups that one side was getting the better of the other. Here it is absolutely clear that the purpose of the NLRB, in this case, was to make it easier for employees to unionize. And I submit to you it's a clear violation, Section 9C5. And that's why they weren't more forthcoming, in this case, about doing what they were really doing. And so the thing that I was focusing on previously, which is specialty health care, followed by a full three years, the decision of Blue Man Vegas, and you're saying that Judge Ginsburg, who's pretty well respected, just made it up. I am. He was wrong. And the other two panelists went along with him. They simply misread those board cases. Blue Man Vegas adopted a standard that simply was not there. Okay. Thank you, Your Honor. And on the facts, did the board do the proper job here? In Blue Man Vegas? No, in this case. In this case? No, Your Honor, they did not. All right. If given the opportunity to argue this case to the board under the traditional community of interest test, I believe I can win this case. You had the opportunity to argue it under the traditional test, and you didn't articulate that, right? I did not have the opportunity because I was square looking at specialty health care in the face. Okay. Thanks. Thank you, Your Honor. All right. Thank you very much. Thank you to both counsel, and we'll take the matter under advisement.